Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 78 C 4075 | DATE | 11/17/2003 |
| CASE TITLE | ELAINE L. CHAO vs. LORAN W. ROBBINS, et al | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## MEMORANDUM AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum And Order re the framework of the 1982 consent decree (in No. 78 C 342) that governs administration of Central States, Southeast and Southwest Areas Pension Fund ("Pension Fund") and the 1985 consent decree (in Nos. 78 C 4075 and 82 C 7951) that governs administration of Central States, Southeast and Southwest Areas Health and Welfare Fund ("Health Fund").

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 18 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | LG | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELAINE L. CHAO, Secretary of the United States Department of Labor, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 78 C 342 |
| ESTATE OF FRANK E. FITZSIMMONS, et al., | ) ) ) | (United States District Judge James B. Moran) |
| Defendants. | ) ) | |
| ELAINE L. CHAO, Secretary of the United States Department of Labor, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 78 C 4075 |
| LORAN W. ROBBINS, et al., | ) ) | (United States District Judge James B. Moran) |
| Defendants. | ) ) | |
| and | ) ) | |
| ELAINE L. CHAO, Secretary of the United States Department of Labor, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 82 C 7951 |
| ALLEN M. DORFMAN, et al., | ) ) | (United States District Judge James B. Moran) |
| Defendants. | ) | |

DOCKETED
NOV 1 8 2003

## MEMORANDUM AND ORDER

This memorandum and order is entered within the framework of the 1982 consent decree (in No. 78 C 342) that governs administration of Central States, Southeast and Southwest

Areas Pension Fund ("Pension Fund") and the 1985 consent decree (in Nos. 78 C 4075 and 82 C 7951) that governs administration of Central States, Southeast and Southwest Areas Health and Welfare Fund ("Health Fund"). (Both decrees have been amended from time to time.) The independent special counsel appointed by the Court pursuant to those consent decrees for both the Pension Fund and the Health Fund (collectively, "Funds") is Frank J. McGarr.

*The Funds' Financial Challenges and Efforts to Address Them*

The consent decrees provide for quarterly reports from special counsel to the Court and through these and other communications the Court has been regularly and thoroughly informed about the administration of the Funds for many years. The Court has learned that the unfavorable economic climate that has prevailed for the past several years has taken its toll on the economic health of the Funds. The Pension Fund, despite the independent professional investment management structure required by its consent decree, fell well short of its assumed investment return in 2000, 2001 and 2002. It also has been hurt by the liquidation of Consolidated Freightways and other experience losses. The trustees have been advised that, absent adequate corrective measures, the Pension Fund will begin to experience annual Funding Deficiencies as early as 2004.

The Health Fund, despite remarkable savings in its managed care programs, also is in the midst of major operating deficits, largely the result of rising medical-care cost trends in recent years. Compounding this problem, the challenges facing

the Pension Fund are so serious that the Trustees may reasonably expect that future contributions to the Health Fund, required under existing collective bargaining agreements, may be allocated or reallocated in whole or in part to the Pension Fund. Such an occurrence would clearly exacerbate the Health Fund's deteriorating funding situation and further reduce its declining reserves in the absence of appropriate modifications to the Health Fund's benefit plan documents.

Faced with these issues, the trustees of the Funds ("Trustees") have been attentive in searching for effective solutions and, in recent years, have adopted and planned for corrective measures intended to secure the Funds' financial stability. In pursuing that objective, the Trustees have sought advice from a variety of actuarial consultants and other experts. The actuarial consultants to the Trustees have pointed to three separate developments that are all necessary to address the Pension Fund's problems: reductions of plan benefits, increased contributions from the employers that maintain the Funds and increased investment returns.

The Trustees have worked for much of 2003 to develop a package of prospective pension benefit reductions that will produce savings without undermining the Pension Fund's ability to retain bargaining-unit participants. The trustees appointed by employers ("Employer Trustees") and the trustees appointed by employees ("Employee Trustees") prepared and exchanged benefit reduction proposals, and all the Trustees concurred that, if they did not fully agree on the Funds' benefit changes to be adopted,

these matters would be referred to the Court for a binding decision in time for the changes to take effect January 1, 2004. A special board meeting (one of several this year) for that purpose was convened on September 3, 2003, and during that meeting the Employee Trustees distributed a document entitled "UNION TRUSTEES COUNTER-PROPOSAL WITH RESPECT TO FUNDING" ("Proposal"). The Proposal consists of two parts:

    (1) Part 1 makes the entire Proposal contingent on:

        (a) "agreement by the major employers to implement significant increases in Pension contributions during 2004, and, if necessary, in future years";

        (b) "In 2003, ... negotiated contribution increases shall be allocated to the Health and Welfare Plan as originally agreed by the negotiating parties"; and

        (c) "an agreement by UPS to contribute the 60¢ scheduled to go into effect on August 1, 2003 to the Health and Welfare Fund and its provision of a letter of agreement, committing that its employees shall remain participants in the Health and Welfare Fund for the duration of the current collective bargaining agreement"; and

    (2) Part 2 outlines benefit plan modifications to be adopted by the Pension Fund and the Health Fund, effective January 1, 2004.

The Proposal was put to a vote at the September 3 board meeting. All Employee Trustees voted in favor of the Proposal and all Employer Trustees voted against the Proposal, resulting in a deadlock. The Employer Trustees explained that their opposition is limited to Part 1 of the Proposal, which they consider beyond the Trustees' authority.

These matters and the Trustees' deadlock were referred to the Court at conferences that began in September and are continuing. The Court has received the Proposal and other submissions. After the Court had an opportunity to examine the Proposal, a meeting of the Court with the ten Trustees and their counsel was convened on October 1. Also present were special counsel McGarr, his counsel and representatives of the Funds and the Secretary of Labor ("Secretary"), along with a member of one of the Funds' actuarial consulting firms, whose September 16 report to the Trustees had previously been submitted to the Court. During this October 1 meeting, the actuarial consultant summarized significant economic facts, actuarial projections and remedial suggestions that are stated in his September 16 report and numerous Trustees expressed their views.

*Findings and Order*

The actions that culminated in the Consent Decrees were brought under 29 U.S.C. § 1132, which authorizes this Court"... to enjoin any act or practice which violates any provision of this subchapter [29 U.S.C. §§ 1001-1191c] ... [and to grant] appropriate equitable relief ... to redress such violations or ... [and] to enforce any provisions of this subchapter ...." In addition, ERISA Section 302(a), 29 U.S.C. § 1082(a), obligates the Pension Fund to "... satisfy the [ERISA] minimum funding standard ... for any plan year", which means that the Pension Fund must avoid, "... as of the end of [every] such plan year ... [,] an accumulated funding deficiency" ("Funding Deficiency").

Consistent with 29 U.S.C. § 1132, the consent decrees expressly require the Funds to "operate in full compliance with ERISA", and each decree also states:

> "This Court shall retain jurisdiction over the parties and subject matter of this action for the purpose of enforcing the terms of this Consent Decree...."

Based on these authorities, the Court concludes that it can grant appropriate equitable relief relative to any Funding Deficiency, actual or imminently threatened, because it is *per se* a violation of ERISA Section 302, 29 U.S.C. § 1082. And the Court need not wait for the initial Funding Deficiency to occur if it finds that the Pension Fund is threatened with irreparable injury.

Congress also made clear that the employers maintaining a plan such as the Pension Fund are obligated to remit sufficient contributions to avoid a Funding Deficiency, 29 U.S.C. § 1082(c)(11), 26 U.S.C. § 412(c)(11), and that if a plan such as the Pension Fund experiences a Funding Deficiency, the plan's contributing employers are obligated to "correct" the Funding Deficiency. 26 U.S.C. § 4971. Any relief the Court may consider relative to a Funding Deficiency of the Pension Fund, actual or imminently threatened, will take into account the role intended for a plan's contributing employers in this legislative scheme.

Based upon prior submissions, the Court makes the following determinations and enters the following order.

1. The current deadlock pertaining to the Proposal is a "deadlock on the administration" of the Funds, between the Employee Trustees and the Employer Trustees, within the meaning of 29 U.S.C. § 186(c)(5), "there are no neutral persons empowered to break such deadlock", see id., and the trust agreement of each of the Funds provides that in such an instance "the Trustees shall appoint a neutral party empowered to break such deadlock within a reasonable length of time". Pursuant to this provision, and in view of the Court's continuing jurisdiction under the Consent Decree, the Trustees have requested that the Court resolve their deadlock, and the Court has agreed.

2. Regarding the possible benefit modifications and Part 2 of the Proposal, the Court finds that the proposed modifications are in the best interest of the participants and beneficiaries of both Funds and that time is of the essence in deciding this part of the deadlock so that cost savings can begin to be achieved. The Court accordingly directs that the benefit modifications be finalized and adopted by the Trustees during 2003 (including final revisions on which the Trustees agree), effective not later than January 1, 2004, and that notice to participants and others be provided as required by ERISA.

3. The Court is sensitive to the funding requirements and legitimate concerns that underlie Part 1 of the Proposal and recognizes the need to continue monitoring developments in this regard. The Court is informed that most employer contributions to the Funds are paid by employers bound by one of two national

master agreements, each of which expires in 2008. While both agreements provide for annual contribution increases between now and expiration, the uncontradicted projection of the Funds' actuaries is that annual Funding Deficiencies will begin long before 2008, very possibly as early as year-end 2004, even if (1) all of the 2004-2008 increases are allocated to the Pension Fund, (2) the Part 2 benefit modifications are adopted this year, and (3) the Pension Fund realizes investment returns at or slightly above its assumed 8% annual rate of return. As explained above, if the Pension Fund experiences a Funding Deficiency at any year-end, this event alone (whatever its causes) will constitute a violation of ERISA Section 302 and Internal Revenue Code Section 412 and of the Pension Fund's consent decree.[1]

4. At the conference on October 1, 2003, the Court admonished the Trustees of their responsibilities to keep the union and the Funds' major contributing employers informed of the Fund's financial circumstances and the pressing need for substantial additional employer contributions to the Pension Fund. The Court is informed that meetings for this purpose are in progress. The Court intends to monitor these circumstances closely and to convene regular conferences with special counsel McGarr, his attorney and representatives of the Funds and the

---

[1] In certain circumstances, the Internal Revenue Service may grant relief that could affect whether or to what extent a plan experiences a Funding Deficiency in a particular plan year. The Court directs the Trustees to promptly inform the Court of any application for such relief, and the decision on that application.

Secretary until adequate corrective measures are shown to be in effect.

Entered: November 17, 2003.

                                     */s/ James B. Moran*
                                     JAMES B. MORAN
                                     United States District Judge